UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| THE ROBINSON FAMILY TRUST, derivatively on behalf of FIRSTMERIT CORPORATION, | : | Civil Action No. 5:12-cv-1713 |
| | : | (Judge _____) |
| Plaintiff, | : | |
| v. | : | |
| PAUL G. GREIG, TERRENCE E. BICHSEL, WILLIAM P. RICHGELS, DAVID G. GOODALL, LARRY A. SHOFF, STEVEN H. BAER, R. CARY BLAIR, ROBERT W. BRIGGS, KAREN S. BELDEN, JOHN C. BLICKLE, RICHARD J. COLELLA, GINA D. FRANCE, J. MICHAEL HOCHSCHWENDER, TERRY L. HAINES, CLIFFORD J. ISROFF and PHILIP A. LLOYD II, | : | **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** |
| | : | **(Jury Trial Demanded)** |
| Defendants, | : | |
| and | : | |
| FIRSTMERIT CORPORATION, | : | |
| Nominal Defendant. | : | |

1.     This is a verified shareholder derivative action on behalf of nominal defendant FirstMerit Corporation ("FirstMerit" or the "Company") against FirstMerit's Board of Directors (the "Board") and certain of FirstMerit's executive officers and directors.  This action seeks to hold Defendants (defined herein) liable for breach of their fiduciary duties of candor, good faith and loyalty, unjust enrichment and aiding and abetting from 2011 to the present (the "Relevant Period") in connection with the award of excessive and unwarranted 2011 executive compensation.

## NATURE OF THE ACTION

2.      This is a failed "say on pay" shareholder derivative action, arising from the Board's unwarranted and excessive spending of Company (*i.e.*, stockholders') funds on executive compensation -- namely, the Board's recent authorization of excessive 2011 compensation for executives who have presided over extremely disappointing Company performance.  In particular, the 2011 executive compensation awarded to top FirstMerit executives totaled over $12.1 million, including over $6.63 million awarded to FirstMerit Chairman, President and Chief Executive Officer ("CEO") Paul G. Greig ("Greig").  Greig's 2011 compensation was a 16% increase from 2010, while FirstMerit's share price dropped at least 20% in 2011.

3.      Meanwhile, Defendants and, in particular, the Board's Compensation Committee (the "Compensation Committee") have represented publicly that the Board's executive compensation practices are rooted in a pay-for-performance policy, which is dependent upon Company performance and shareholder return.  For example, in the Company's Proxy Statement filed with the Securities and Exchange Commission ("SEC") on Form DEF 14A on March 8, 2012 (the "Proxy"), the Board claimed that its executive compensation policy encompasses  "performance-based, at-risk pay components aligned to strategic and financial performance objectives and risk mitigation and retention related components. Pay elements are specifically designed to encourage and reward the achievement of our long-term interests and the creation of ***long-term shareholder value***. . . . Ultimately, the Compensation Committee's goal is to structure a program that promotes our long-term success and provides an optimal long-term value creation scenario for our shareholders . . ."

4.      Stated another way, the Company's executives should receive enhanced compensation only if they create meaningful and long-term performance for FirstMerit stockholders, and they should receive less compensation when they do not.  Here, despite the Board's public

statements, it awarded excessive compensation, particularly to defendant Greig, in the wake of FirstMerit's plummeting stock price and drastically reduced revenues.

5.    Indeed, in addition to violating its own stated pay-for-performance policy, the Board's decision to award excessive compensation for 2011 demonstrates that its prior statements contending that it would pay for performance and reward long-term performance were false and misleading.  This is particularly true considering that "annual performance" in 2011 included the plummeting value of FirstMerit stock by over 20%.

6.    Fortunately for FirstMerit shareholders, a "say on pay" vote was conducted via the Proxy, whereby FirstMerit shareholders were afforded the chance to voice their dissatisfaction with the Board's clear disregard for their interests, the Board's own prior statements regarding its pay-for-performance compensation policy, and the Board's apparent refusal to acknowledge the Company's dreadful performance in determining executive compensation (and, in particular, Greig's compensation) for 2011.  In the Proxy, the Board unsurprisingly recommended that FirstMerit shareholders should approve the Board's 2011 executive compensation program and the excessive compensation (including the material pay increase for Greig), despite the fact that defendants had obviously not delivered any short-term Company performance *or* any long-term performance to shareholders whatsoever.

7.    On April 18, 2012, a majority of voting FirstMerit stockholders *rejected* the Board's 2011 senior officer compensation recommendation.  The vote was 47,183,967 against the compensation recommendation, and 41,161,172 for the compensation recommendation.  Clearly, FirstMerit shareholders concluded that 2011 compensation increases were not in their best interests, and that the Board was not paying for performance, as it had promised shareholders it would.

8.      Unfortunately for FirstMerit stockholders, however, despite the adverse shareholder vote, the Board has not rescinded excessive 2011 executive compensation, ***nor*** has the Board indicated that they will do so.

9.      The directors on the Board breached their fiduciary duties by approving excessive 2011 compensation in the immediate wake of, among other things, the plummet of the Company's stock price in 2011, despite claiming to adhere to a pay-for-performance policy, which purportedly hinged upon, among other things, the Company's performance and the long-term interests of stockholders.  The inference that the Board breached its fiduciary duties is supported by the facts that: (1) a majority of the Company's stockholders voted that the 2011 executive compensation was not in their best interests; and (2) the Board has failed to respond to the negative vote.  By falsely claiming that the Board paid for performance and that the Company's executive officers would be rewarded for Company performance, defendants also breached their fiduciary duties by issuing a series of materially misleading statements.

10.      For all of these reasons, the Board cannot now hide behind the so-called "business judgment rule," which is a summary judgment stage or trial stage defense, and which is only available to faithful fiduciaries.  Based on the particularized facts alleged herein, Plaintiff (and the majority of the Company's voting stockholders) has cast doubt on the Board's decision-making, as well as the accuracy and truthfulness of its public statements, and accordingly, this derivative action on behalf of the Company should proceed.

11.      By this shareholder derivative action, Plaintiff seeks to recover damages and other relief on behalf of FirstMerit against Defendants for their breaches of fiduciary duties of candor, good faith, and loyalty, and for unjust enrichment.  Absent this action, the majority will of the

Company's stockholders shall be rendered meaningless, and the Company's rights against its wayward fiduciaries will not be exercised, to the further detriment of the Company.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this Complaint states a federal question.  This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a).  This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because a substantial portion of the transactions and wrongs complained of herein, including defendants' participation in the wrongful acts detailed herein, occurred in this District and FirstMerit maintains its corporate headquarters in this District.  Further, Defendants either reside in or maintain executive offices in this District, and/or have received substantial compensation in this District by engaging in numerous activities and conducting business here, which had an effect in this District.

## THE PARTIES

14.     Plaintiff The Robinson Family Trust ("Plaintiff") is a shareholder of FirstMerit and has been continuously throughout the Relevant Period.  Plaintiff voted against the Board's 2011 senior officer compensation recommendation.

15.     Nominal defendant FirstMerit is an Ohio corporation with its executives offices located at III Cascade Plaza, 7th Floor, Akron, Ohio 44308.  According to its public filings, FirstMerit is a diversified financial services company, with assets of $14.7 billion as of March 31, 2012 and 205 banking offices and 213 ATMs in Ohio, Western Pennsylvania, and Chicago, Illinois areas. FirstMerit provides a complete range of banking and other financial services to consumers and businesses through its core operations. Principal wholly-owned subsidiaries include: FirstMerit

Bank, N.A. (the "Bank"), FirstMerit Mortgage Corporation, FirstMerit Title Agency, Ltd., and FirstMerit Community Development Corporation.

16.     Defendant Greig  has served the Company's Chairman, President and CEO since 2006.  Greig also serves as the Chairman, President and CEO of the Bank.

17.     Defendant Terrence E. Bichsel ("Bichsel") has served as the Company's Executive Vice President and Chief Financial Officer ("CFO") since 1999.  In addition, Bichsel serves as Executive Vice President and CFO of the Bank.

18.     Defendant David G. Goodall ("Goodall") has served as the Company's Executive Vice President, Commercial Banking since 2009.

19.     Defendant William P. Richgels ("Richgels") has served as the Company's Executive Vice President and Chief Credit Officer since 2007.

20.     Defendant Larry A. Shoff ("Shoff") has served as the Company's Executive Vice President and Chief Information Officer, and as the Executive Vice President and Chief Technology Officer of the FirstMerit Services Division, since 1999.

21.     Defendant Steven H. Baer ("Baer") has served as a director of the Company since 2007.

22.     Defendant R. Cary Blair ("Blair") has served as a director of the Company since 1996. In addition, defendant Blair served as Chairman of the Compensation Committee during the Relevant Period.

23.     Defendant Robert W. Briggs ("Briggs") has served as a director of the Company since 1996.

24.     Defendant Karen S. Belden ("Belden") has served as a director of the Company since 1996.

25.     Defendant John C. Blickle ("Blickle") has served as a director of the Company since 1990.  In addition, defendant Blickle served as a member of the Compensation Committee during the Relevant Period.

26.     Defendant Richard J. Colella ("Colella") has served as a director of the Company since 1998.

27.     Defendant Gina D. France ("France") has served as a director of the Company 2004.

28.     Defendant J. Michael Hochschwender ("Hochschwender") has served as a director of the Company since 2005.  In addition, defendant Hochschwender served as a member of the Compensation Committee during the Relevant Period.

29.     Defendant Terry L. Haines ("Haines") has served as a director of the Company since 1991.  In addition, defendant Haines served as a member of the Compensation Committee during the Relevant Period.

30.     Defendant Clifford J. Isroff ("Isroff") has served as a director of the Company since 1981 and as Lead Independent Director since 2003.  In addition, defendant Isroff served as a member of the Compensation Committee during the Relevant Period.

31.     Defendant Philip A. Lloyd II ("Lloyd") has served as a director of the Company since 1988.  In addition, defendant Lloyd served as a member of the Compensation Committee during the Relevant Period.

32.     Defendants Greig, Bichsel, Goodall, Richgels, Shoff, Baer, Blair, Briggs, Belden, Blickle, Colella, France, Hochschwender, Haines, Isroff and Lloyd shall be collectively referred to herein as "Defendants."

33.     Defendants Blair, Blickle, Hochschwender, Haines and Isroff shall be collectively referred to herein as the "Compensation Committee Defendants."

## THE DUTIES OF FIRSTMERIT'S DIRECTORS AND OFFICERS

34.     As directors and officers of FirstMerit, Defendants owed FirstMerit and its shareholders an unremitting duty of loyalty that requires directors and officers to put the best interests of FirstMerit's shareholders ahead of their own personal interests and the interests of FirstMerit's corporate managers.  Directors who fail to act in shareholders' best interests breach their fiduciary duty of loyalty and may be held liable for damages.  A claim for a breach of the duty of loyalty is, as a matter of law, non-exculpable.

35.     Because of their executive and directorial positions with FirstMerit, Defendants knew or should have known that by increasing 2011 executive compensation following the plummeting value of FirstMerit's stock, they were breaching their fiduciary duties of candor, good faith, loyalty and reasonableness owed to FirstMerit, as well as unjustly enriching certain of the Company's senior officers.  Defendants also knew or should have known that by unanimously recommending shareholder approval of the 2011 executive compensation in the Proxy, they were breaching their fiduciary duty of candor and violating the Board's purported pay-for-performance executive compensation policy.  There is doubt that those decisions were presumptively protected business judgments, and that the Board acted loyally in making these business judgments.

36.     Because of their executive and directorial positions with FirstMerit, Defendants also knew or should have known that the Proxy's (and other SEC filings') repeated representations that the Board pays for performance were false and misleading.  By causing such statements to be made, the Defendants were breaching their fiduciary duties of loyalty, good faith, candor and independence owed to FirstMerit and its shareholders, and these actions do not qualify for protection under the business judgment rule.  The 2011 executive compensation increases were inconsistent with the Board's stated pay-for-performance policy and Defendants' repeated statements to the contrary were

designed to and did conceal the fact that the Board was overpaying the Company's executive officers via compensation plans premised on an illusory pay-for-performance policy.

37.     At times relevant hereto, Defendants were the agents of each of the other Defendants and were at all times acting within the course and scope of such agency.

38.     Pursuant to the Company's Compensation Committee charter, the Compensation Committee Defendants were specifically obligated, *inter alia*, to:

> (a)     Establish, in consultation with senior management, the Company's general compensation philosophy, and oversee the development and implementation of compensation programs;
>
> (b)     Review and approve corporate and individual goals relevant to CEO compensation, administer the performance evaluation of the CEO by the Board and recommend to the Board the CEO's compensation level based on this evaluation. In recommending the long-term incentive component of the CEO compensation, the Committee shall consider the Company's performance and ***relative shareholder return***, the value of similar incentive awards to CEO's at comparable companies and past awards given to the CEO;
>
> (c)     Make recommendations to the Board with respect to the Company's non-sales based incentive compensation plans and equity based plans, oversee the activities of the committees responsible for administering these plans and discharge any responsibilities imposed on the Committee by any of these plans; and
>
> (d)     Review and approve for the CEO and executive officers of the Company (i) annual base salary level, (ii) annual incentive opportunity level, (iii) long-term incentive opportunity level, (iv) employment agreements, severance arrangements, change in control or similar termination agreements, and (v) other special or supplemental benefits.

## AIDING AND ABETTING AND CONCERTED ACTION

39.     In committing the wrongful acts particularized herein, Defendants have pursued or joined in the pursuit of a common course of conduct, and have acted in concert with one another in furtherance of their common plan or design.  In addition to the wrongful conduct particularized

herein as giving rise to primary liability, Defendants further aided and abetted and/or assisted each other in breach of their respective duties.

40.    Each of the Defendants aided and abetted and rendered substantial assistance in the wrongs detailed herein.  In taking such actions to substantially assist the commission of the wrongdoing detailed herein, each Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his, her, or its overall contribution to and furtherance of the wrongdoing.

## FACTUAL ALLEGATIONS

41.    According to its public filings, FirstMerit is a diversified financial services company, with assets of $14.7 billion as of March 31, 2012 and 205 banking offices and 213 ATMs in Ohio, Western Pennsylvania, and Chicago, Illinois areas. FirstMerit provides a complete range of banking and other financial services to consumers and businesses through its core operations. Principal wholly-owned subsidiaries include: the Bank, FirstMerit Mortgage Corporation, FirstMerit Title Agency, Ltd., and FirstMerit Community Development Corporation.

42.    Throughout the Relevant Period, the Board (and particularly, the Compensation Committee) overcompensated FirstMerit's senior executives irrespective of the Company's actual performance, despite the Board's stated pay-for-performance policy, which purportedly hinged upon Company performance and shareholder value.  The Board is directly responsible for the disconnect between management and stockholder interests.

43.    Specifically, for 2011, FirstMerit's shares lost over 20% of their value.  On December 31, 2010, FirstMerit shares closed at $19.79 per share.  In 2011, FirstMerit shares fell to as low as $10.31 per share, and closed on December 30, 2011 at $16.76 per share.

44.    As detailed herein, in light of, *inter alia*, the Board's repeated pay-for-performance statements (including those in the Proxy), there is reason to doubt that: (a) the Board complied with

its fiduciary duties; and/or (b) the Board's 2011 compensation decisions were protected business judgments.  Plaintiff alleges that the Board's 2011 compensation decisions constituted a breach of its fiduciary duties of candor, good faith and loyalty, as well as causing certain of the Defendants to be unjustly enriched.

**The Board's Purported "Pay-For-Performance" Policy**

45.     Defendants have represented publicly that the Board's executive compensation practices are firmly rooted in a pay-for-performance policy.  For example, in the Proxy, the Board claimed that its executive compensation policy is designed "to encourage and reward the achievement of our long-term interests and the creation of long-term shareholder value."  Additionally, the Board claimed that its executive compensation policy is structured to promote "our long-term success and provides an optimal long-term value creation scenario for our shareholders ..."

46.     Stated obversely, the Company's executives should receive enhanced compensation only if they create short and long-term performance for FirstMerit and its stockholders, and they should receive less compensation when they do not.  Despite its public statements, however, the Board did the exact opposite.

**2011 Executive Compensation**

47.     For 2011, FirstMerit's five highest-paid officers – defendants Greig, Bichsel, Richgels, Goodall and Shoff – collectively received over $12.1 million in executive compensation, as detailed below:

**2011 Summary Compensation Table**

| Name and Principal Position | Year | Salary ($)[1] | Bonus ($)[2] | Stock Awards($) [3] | Non-Equity Incentive Plan Compensation ($)[4] | Change in Pension Value and Nonqualified Deferred Compensation Earnings($)[5] | All Other Compensation ($) | Total($) |
|---|---|---|---|---|---|---|---|---|
| Paul G. Greig | 2011 | $791,250 | $ — | $1,999,995 | $ 1,400,000 | $ 1,923,463 | $ 249,005[6] | $6,363,713 |
| Chairman, President | 2010 | $750,725 | $691,927 | $2,000,000 | $ 1,238,073 | $ 627,261 | $ 202,273 | $5,510,259 |
| and Chief Executive Officer | 2009 | $731,088 | $250,000 | $1,599,992 | $ 113,246 | $ 2,833,715 | $ 379,259 | $5,907,300 |
| Terrence E. Bichsel | 2011 | $387,125 | $ — | $ 427,548 | $ 345,000 | $ 496,781 | $ 51,273[7] | $1,707,727 |
| Exec. V.P. and Chief | 2010 | $361,050 | $126,970 | $ 347,993 | $ 352,274 | $ 514,281 | $ 44,779 | $1,747,347 |
| Financial Officer | 2009 | $345,650 | $112,500 | $ 379,993 | $ 32,126 | $ 409,582 | $ 66,809 | $1,346,660 |
| William P. Richards | 2011 | $387,125 | $ — | $ 427,548 | $ 345,000 | $ 688,806 | $ 50,947[8] | $1,899,426 |
| Exec. V.P. and Chief | 2010 | $361,050 | $126,970 | $ 347,993 | $ 352,274 | $ 653,093 | $ 72,819 | $1,914,199 |
| Credit Officer | 2009 | $345,650 | $112,500 | $ 379,993 | $ 32,126 | $ 172,598 | $ 74,068 | $1,116,935 |
| David G. Goodall | 2011 | $326,000 | $ — | $ 293,929 | $ 300,000 | $ — | $ 111,569[9] | $1,031,498 |
| Exec. V.P., | 2010 | $307,883 | $110,315 | $ 179,984 | $ 232,597 | $ — | $ 96,958 | $ 927,737 |
| Commercial Banking | 2009 | $206,667 | $ 50,000 | $ 195,400 | $ 141,088 | $ — | $ 25,805 | $ 618,960 |
| Larry A. Shoff | 2011 | $292,050 | $ — | $ 244,541 | $ 215,000 | $ 379,319 | $ 29,972[10] | $1,160,882 |
| Exec. V.P. and Chief | 2010 | $284,250 | $133,236 | $ 184,000 | $ 235,207 | $ 272,571 | $ 20,900 | $1,130,164 |
| Information Officer | 2009 | $279,425 | $ 40,000 | $ 149,994 | $ 23,886 | $ 260,363 | $ 29,164 | $ 782,832 |

48. Thus, despite the fact that the Board's pay-for-performance policy was based upon Company performance and "long-term shareholder value," (neither of which has been accomplished), the Board still gave defendant Greig a 16% increase from his 2010 compensation.

**A Majority of FirstMerit's Shareholders Reject the Board's Business Judgment**

49. Fortunately for the Company's shareholders, on March 8, 2012, a "say on pay" vote was conducted via the Proxy, whereby FirstMerit shareholders were given the chance to voice their dissatisfaction with the Board's clear disregard for their interests, the Board's own prior statements regarding its pay-for-performance compensation policy, and the Board's apparent refusal to acknowledge the Company's dreadful performance in determining executive compensation for 2011. The Company's stockholders were thus afforded the opportunity to vote on whether, as the Board claimed, the interests of FirstMerit's executive officers' interests were in fact aligned with those of long-term shareholders.

50. Prior to the Company's 2011 say on pay vote, the Board published the Proxy, wherein it "recommended" to FirstMerit shareholders that they should approve FirstMerit's 2011 executive compensation, stating:

> The Board of Directors unanimously recommends a vote "for" approval, on an advisory basis, of the compensation of FirstMerit's named executive officers.

12

51.     In July 2010, the Dodd-Frank Wall Street Reform and Consumer Protection Act (the "Dodd-Frank Act") was enacted to require certain public companies to submit executive compensation plans to a shareholder vote, widely known as a "say on pay" vote.  *See e.g.* 15 U.S.C. Section 78n-1.[1]  Congress intended Dodd-Frank's say-on-pay vote to function as a referendum on whether the executive compensation awarded was in the best interests of shareholders.  *See* S. Rep. No. 111-176, at 133 (2010) ("shareowner votes on pay [were meant to] serve as a direct referendum on the decisions of the compensation committee and [] offer a more targeted way to signal shareowner discontent than withholding votes from committee members.").  Indeed, according to a Senate Banking Report, the purpose of the Dodd-Frank Act's say-on-pay vote is to provide an efficient means for shareholders, as the owners of a corporation, to collectively express whether the corporation's executive compensation is in their best interests as shareholders.  *See* S. Rep. No. 111-76, at 133.

52.     In their relatively short history, negative "say on pay" votes on executive compensation have been extremely rare.  For instance, between March 2010 and March 2011, out of 101 companies with say-on-pay voting, only two companies had negative votes rejecting the proposed pay:  Jacobs Engineering Group, Inc. and Beazer Homes USA, Inc.  *See* www.pionline.com/article/20110315/DAILYREG/110319948.[2]  Accordingly, during the first year of

---

[1]  Title IX of the Dodd-Frank Act, known as the Investor Protection and Securities Reform Act of 2010, contains the "say-on-pay" provisions at Subtitle E (Accountability and Executive Compensation), Section 951, requiring, among other things, that "[n]ot less frequently than once every 3 years, a proxy or consent or authorization for an annual or other meeting of the shareholders for which the proxy solicitation rules of the Commission require compensation disclosure shall include a separate resolution subject to shareholder vote to approve the compensation of executives . . ."

[2]  In the prior year's proxy season (the 2010 proxy season), over 600 companies held say-on-pay votes, and only three of those companies failed to obtain shareholder approval:  KeyCorp, Motorola,

"say on pay" votes under the Dodd-Frank Act, voting shareholders overwhelmingly endorsed companies' pay programs, providing 91.2% support on average.  *See* June 28, 2011 article entitled "U.S. Proxy Season Review: 'Say on Pay' Votes" available at http://blog.riskmetrics.com (the "June 28 Risk Metrics Article").

53.     This support exceeded the 89.2% average shareholder approval in 2010, when "say on pay" votes were mandated only at U.S. government-supported financial firms.  As of June 28, 2011, shareholders had rejected compensation proposals in say on pay votes at only 37 companies, or just *1.7%* of the more than 2,200 companies in the Russell 3000 index.

54.     Thus, shareholders have almost uniformly supported companies' pay programs, and they have done so by overwhelming margins.  Indeed, of the 1,873 companies that reported voting results as of May 27, 2011, more than two-thirds of those companies received 90% support or more from their voting shareholders.  As of April 17, 2012, 175 companies had held say on pay votes in the calendar year, and 90.4% were approved.

55.     FirstMerit shareholders, however, have notably expressed their disapproval of the Board's 2011 compensation decisions.  On April 17, 2012, a majority of FirstMerit's voting shareholders resoundingly *rejected* the Board's business judgment and its 2010 executive compensation decision.

56.     The Board has done nothing substantive in response to the negative vote, which is in itself a breach of fiduciary duty.

---

Inc., and Occidental Petroleum Corp.  *See*  http://josephandcohen.com/2010/06/joseph-law-newsbrief-%e2%80%9csay-on-pay%e2%80%9d-lessons-from-keycorp%e2%80%99s-2010-%e2%80%9cno-on-pay%e2%80%9d-vote/.

57.     The directors on the Board breached their fiduciary duties by materially increasing 2011 executive compensation for defendant Greig in the immediate wake of the plummeting value of FirstMerit stock and falling revenues, after claiming to adhere to a pay-for-performance policy based on Company performance and long-term stockholder interests.  The inference that the Board breached its fiduciary duties is supported by the facts that: (1) a majority of the Company's stockholders voted that 2011 executive compensation was not in their best interests; and (2) the Board has failed to respond to the negative vote in any meaningful or substantive way.  By falsely claiming that the Board paid for performance and that the Company's executive officers would be rewarded for delivering Company performance, the Board also breached its fiduciary duties by issuing a series of materially misleading statements.

58.     Thus, there is reason to doubt that the Board's actions and public representations were taken or made loyally, and/or in good faith, and/or are entitled to the presumptive protections of the business judgment rule.

## DAMAGES TO FIRSTMERIT

59.     FirstMerit has been damaged by the Board's awards of unwarranted, outsized executive compensation.  During 2011, the Company's stock price plummeted, yet incredibly, executive compensation for the Company's CEO (defendant Greig) increased by 16%, in direct violation of the Board's purported "pay-for-performance" compensation policy.

60.     When given the opportunity to offer their own independent judgment of the Board's award of 2011 executive compensation, a majority of FirstMerit's voting shareholders firmly rejected the 2011 executive compensation (and rightfully so).  Yet, even in the face of this visceral reaction by FirstMerit's shareholders, the Board has not altered or amended the 2011 compensation, to the detriment of the Company and its stockholders.  In fact, the Board has done nothing in

response to the negative vote.  By contract, the FirstMerit executives who received the excessive 2011 compensation have been unjustly enriched.

61.     By this derivative action, Plaintiff seeks to recover damages and other relief for FirstMerit against Defendants for their breaches of fiduciary duties of candor, good faith and loyalty, and for unjust enrichment.  Absent this action, as the Board has already amply demonstrated, the majority will of the Company's stockholders shall be rendered meaningless and the Company's rights against its wayward fiduciaries will not be exercised to the further detriment of the Company.

## DEFENDANTS CAUSED FIRSTMERIT TO ISSUE THE
## MATERIALLY FALSE AND MISLEADING PROXY

62.     During the Relevant Period, Defendants caused FirstMerit to disseminate to shareholders the Proxy in connection with the Company's annual shareholder meeting.  Defendants drafted, approved, reviewed and/or signed the Proxy before it was filed with the SEC and disseminated to FirstMerit shareholders.  Defendants knew, or were deliberately reckless in not knowing, that the Proxy was materially false and misleading.

63.     In particular, in the Proxy, the Board claimed that its executive compensation practices aligned management/stockholder interests because it paid for performance and the Company's executives would receive enhanced compensation only if they achieved increases in Company performance, which rewarded the achievement of long-term interests and the creation of shareholder value.

64.     Defendants' statements in the Proxy were false and misleading, because even though the Company's stock price fell dramatically in 2011 and the value of the Company's stock has eroded, defendant Greig's total compensation has increased 16% from 2010 to 2011.  Accordingly, the Proxy clearly contained the false and misleading statements that the Board allegedly "paid for performance."

## DERIVATIVE AND DEMAND ALLEGATIONS

65.     Plaintiff incorporates the above-referenced paragraphs as if fully set forth herein.

66.     Plaintiff brings this action derivatively on behalf of FirstMerit to redress injuries suffered, and yet to be suffered, by the Company as a direct and proximate result of Defendants' misconduct.  Plaintiff is a current holder of FirstMerit common stock and will adequately represent the interests of the Company in this litigation.  Plaintiff has retained counsel experienced in litigating this type of action.

67.     The Board is currently comprised of the following twelve (12) directors: defendants Greig, Baer, Blair, Briggs, Isroff, Belden, Blickle, Colella, France, Hochschwender, Haines and Lloyd.

68.     There is doubt that the Board's decision to award the 2011 executive compensation, which resulted in (among other things) a 16% raise for defendant Greig, was a protected business judgment, which excuses demand.  The Board claimed that its executive compensation practices aligned management/stockholder interests because it paid for performance and the Company's executives would receive enhanced compensation only if they achieved increases in Company, which benefitted "long-term shareholder interests" and created "long-term shareholder value."  Based on these representations (among others), a majority of the Company's stockholders rejected the Board's 2011 executive compensation recommendation.  These undisputed facts raise doubt that the Board's 2011 compensation decision was a protected business judgment.  Thus, demand is excused.

69.     A majority of the Board is interested in a demand because there is substantial likelihood that they will be held liable for their conduct.  In particular, the Board claimed that its executive compensation practices aligned management/stockholder interests because it paid for performance and the Company's executives would receive enhanced compensation only if they

achieved increases in Company performance, which benefited "long-term shareholder interests" and created "long-term shareholder value."  Therefore, executives should only receive enhanced compensation if both short and long-term performance was delivered to FirstMerit and FirstMerit stockholders.  Based on these representations (among others), a majority of the Company's stockholders rejected the Board's 2011 executive compensation recommendation, and the Board has failed to meaningfully respond to the negative vote.  These undisputed facts raise doubt that a majority of the Board complied with their fiduciary duties of loyalty and good faith.  Thus, demand is excused.

70.     There is doubt that the Board's decision to issue false and misleading statements regarding its purported "pay-for-performance" policy was a protected business judgment, which excuses demand.  In particular, the Board claimed that its executive compensation practices aligned management/stockholder interests because it paid for performance and the Company's executives would receive enhanced compensation only if they achieved increases in Company performance, the Company's executives would receive enhanced compensation only if they achieved increases in Company performance, which benefited "long-term shareholder interests" and created "long-term shareholder value."  Despite this representation, even though the Company's stock price materially declined, the Board still awarded the enhanced executive compensation, in direct contravention of their previously stated "pay-for-performance" policy.  The Board's false and misleading statements raise doubt that they are entitled to the protections of the business judgment rule.  Thus, demand is excused.

71.     The entire Board is interested in a demand because there is substantial likelihood that they will be held liable for their conduct.  In particular, the Board claimed that its executive compensation practices aligned management/stockholder interests because it paid for performance

and the Company's executives would receive enhanced compensation only if they achieved increases in Company performance, which benefited "long-term shareholder interests" and created "long-term shareholder value."  Despite this representation, even though the Company's stock price materially declined, the Board still awarded the enhanced executive compensation, in direct contravention of their previously stated "pay-for-performance" policy.  Accordingly, the Board's false and misleading statements raise doubt that the entire Board complied with their fiduciary duties of loyalty and good faith.  Because the entire Board faces a substantial likelihood of liability in connection with the issuance of false and misleading statements,  demand is excused.

72. A pre-suit demand is excused because the entire Board devised the illicit compensation, approved the illicit compensation, recommended publicly that FirstMerit's shareholders unanimously approve FirstMerit's 2011 executive compensation (including material pay increases for FirstMerit's CEO), and suffered a negative shareholder vote on the compensation. On April 18, 2012, a majority of voting FirstMerit stockholders *rejected* the Board's 2011 senior officer compensation recommendation.  The vote was 47,183,967 against the compensation recommendation, and 41,161,172 for the compensation recommendation.  Yet, the Board has not altered or otherwise amended the 2011 executive compensation, nor indicated that it has any intention of doing so.  By first recommending that the Company's stockholders approve the excessive 2011 executive compensation, and then failing to take any action whatsoever in the face of the adverse stockholder vote, the Board has openly demonstrated its hostility to this action and that a pre-suit demand upon it to take such action is a useless and futile act.  All members of Board face a substantial likelihood of liability for their breach of fiduciary duties, and any demand upon them is futile since there is reason to doubt that these same directors could exercise their independent

business judgment over whether to bring suit against themselves for breach of fiduciary duty in awarding the challenged compensation.

73.     Pre-suit demand on defendant Greig  is excused because his principal professional occupation is his employment as President and CEO of FirstMerit.  In addition, Defendants have admitted in the Proxy that defendant Greig is not independent.  Accordingly, defendant Greig has received and continues to receive substantial monetary compensation and other valuable benefits (including the excessive compensation complained of herein).  Thus, defendant Greig lacks independence, rendering him incapable of impartially considering a demand to commence and vigorously prosecute this action.

74.     Moreover, as alleged herein, Greig received excessive and unwarranted executive compensation in 2011, and, as a result, was the direct recipient of financial benefits from the misconduct challenged herein that were not shared with FirstMerit's stockholders.  Thus, Greig is directly interested in a demand, and accordingly, pre-suit demand upon Greig is excused.

75.     Pre-suit demand on defendant Baer is excused because Baer receives substantial monetary compensation from FirstMerit for his role as a member of consulting firm Rally Capital Services, LLC ("Rally Capital").  Specifically, the Bank paid fees to Rally Capital which, during 2011, exceeded 5% of Rally Capital's annual consolidated gross revenues. This could interfere with defendant Baer's exercise of his independent judgment in carrying out his responsibilities as a Company director.  In addition, Defendants have admitted in the Proxy that defendant Baer is not independent.  Thus, defendant Baer lacks independence, rendering him incapable of impartially considering a demand to commence and vigorously prosecute this action.

76.     Defendants Blair, Blickle, Hochschwender, Haines and Isroff  are each interested in a demand as a result of their conduct on the Compensation Committee.  Pursuant to the Company's

Compensation Committee charter, directors on the Compensation Committee are responsible for, *inter alia*, reviewing and setting executive compensation in conformity with the Board's pay-for-performance policy.  Defendants Blair, Blickle, Hochschwender, Haines and Isroff  breached their fiduciary duties of due care, loyalty, and good faith, because the Compensation Committee, *inter alia*, devised, approved and awarded the above-discussed 2011 executive compensation, which was wholly divorced from the Board's pay-for-performance criteria.  Therefore, defendants Blair, Blickle, Hochschwender, Haines and Isroff  (if not the entire Board) each face a substantial likelihood of liability for their breach of fiduciary duties, and any demand upon them is futile since there is reason to doubt that these same directors could exercise their independent business judgment over whether to bring suit against themselves for breach of fiduciary duty in awarding the challenged compensation.

77.     A pre-suit demand is further excused because the entire Board  either were at fault for the misconduct described herein and/or are liable for the misconduct described herein.  As such, all Board members face a substantial likelihood of liability for their breach of fiduciary duties, and any demand upon them is futile since there is reason to doubt that these same directors could exercise their independent business judgment over whether to bring suit against themselves for breach of fiduciary duty in awarding the challenged compensation, and are disabled as a matter of law from objectively considering any pre-suit demand, rendering demand futile and excused.

### FIRST CAUSE OF ACTION
### Against Defendants for Breach of Fiduciary Duty in Connection For the Issuance of False and Misleading Statements

78.     Plaintiff incorporates the above-referenced paragraphs as if fully set forth herein.

79.     Each of the Defendants was a director and/or officer of FirstMerit and as such owed to FirstMerit the highest duty known to the law.  Each of the Defendants agreed to and did

participate in and/or aided and abetted one another in a deliberate course of action designed to divert corporate assets in breach of the fiduciary duties these Defendants owed to FirstMerit.

80.     As demonstrated by the allegations above, Defendants breached their fiduciary duties of loyalty, good faith, candor and independence owed to FirstMerit and its shareholders, and failed to disclose material information and/or made material misrepresentations to shareholders regarding FirstMerit's 2011 executive compensation policy.

81.     Defendants have violated fiduciary duties of care, loyalty, good faith, candor and independence owed to FirstMerit and its shareholders, have engaged in unlawful self-dealing and have acted to put their personal interests and/or their colleagues' interests ahead of the interests of FirstMerit and its shareholders.  As directors and/or officers of FirstMerit, Defendants participated in the wrongful acts alleged herein.  They thereby breached their fiduciary duties to FirstMerit's shareholders.

82.     As corporate fiduciaries, Defendants owed FirstMerit and its shareholders a duty of candor and full and accurate disclosure.  As a result of the conduct complained of, Defendants made, or aided and abetted the making of, numerous misrepresentations to and/or concealed material facts from FirstMerit's shareholders despite their duties to, *inter alia*, disclose the true facts regarding FirstMerit.  Thus they have violated their duty of candor.

83.     In committing the wrongful acts particularized herein, Defendants have pursued or joined in the pursuit of a common course of conduct, and have acted in concert with one another in furtherance of their common plan or design.

84.     At all relevant times, Defendants collectively and individually initiated a course of conduct which was designed to and did: (i) conceal the fact that the Company was overpaying its officers via compensation plans premised on an illusory pay-for-performance executive

22

compensation scheme; and (ii) maintain their directorial and executive positions at FirstMerit and the profits, power and prestige which they enjoyed as a result of these positions.

85.     In particular, in the Proxy, the Board claimed that its executive compensation practices aligned management/stockholder interests because it paid for performance and the Company's executives would receive enhanced compensation only if they achieved increases in Company performance, the design of which was "to encourage and reward the achievement of our long-term interests and the creation of long-term shareholder value."  Despite this (and other) representations, even though the Company experienced plummeting stock value, the Board still awarded excessive executive compensation, in direct contravention of their previously stated pay-for-performance policy.  Accordingly, it is clear that the Board's repeated statements that it pays for performance were false and misleading.

86.     Defendants' misconduct was not due to an honest error of judgment, but rather their bad faith and was done knowingly, willfully, intentionally or recklessly.

87.     By reason of the foregoing acts, practices and course of conduct, Defendants have failed to exercise good faith and instead have acted knowingly or in reckless disregard of their fiduciary obligations toward FirstMerit and its public shareholders, harming FirstMerit.

**SECOND CAUSE OF ACTION**
**Against Defendants for Breach of Fiduciary Duty in Connection with the Board's**
**Compensation Practices**

88.     Plaintiff incorporates the above-referenced paragraphs as if fully set forth herein.

89.     Each of the Defendants was a director and/or officer of FirstMerit and as such owed to FirstMerit the highest duty known to the law.  Each of the Defendants agreed to and did participate in and/or aided and abetted one another in a deliberate course of action designed to divert corporate assets in breach of the fiduciary duties these Defendants owed to FirstMerit.

90.     As demonstrated by the allegations above, Defendants breached their fiduciary duties of loyalty, good faith, candor and independence owed to FirstMerit and its shareholders by failing to adhere to the Company's purported pay-for-performance policy.  In particular, in the Proxy, the Board claimed that its executive compensation practices aligned management/stockholder interests because it paid for performance and the Company's executives would receive enhanced compensation only if they achieved increases in Company performance, the design of which was "to encourage and reward the achievement of our long-term interests and the creation of long-term shareholder value."  Despite this (and other) representations, even though the Company experienced plummeting stock value, the Board still increased executive compensation, in direct contravention of their previously stated pay-for-performance policy.  This increase in executive compensation in direct contravention of the Board's stated pay-for-performance policy was a breach of the Board's fiduciary duties.

91.     Defendants have violated fiduciary duties of care, loyalty, good faith, candor and independence owed to FirstMerit and its shareholders, have engaged in unlawful self-dealing, and have acted to put their personal interests and/or their colleagues' interests ahead of the interests of FirstMerit and its shareholders.  As directors and/or officers of FirstMerit, Defendants participated in the wrongful acts alleged herein.  They thereby breached their fiduciary duties to FirstMerit's shareholders.

92.     In committing the wrongful acts particularized herein, the Defendants have pursued or joined in the pursuit of a common course of conduct, and have acted in concert with one another in furtherance of their common plan or design.

93.     Defendants' misconduct was not due to an honest error of judgment, but rather their bad faith and was done knowingly, willfully, intentionally or recklessly.

94. By reason of the foregoing acts, practices and course of conduct, Defendants have failed to exercise good faith and instead have acted knowingly or in reckless disregard of their fiduciary obligations toward FirstMerit and its public shareholders, harming FirstMerit.

## THIRD CAUSE OF ACTION
### Against Defendants for Breach of Fiduciary Duty in Connection with the Failure to Respond to the Negative Say on Pay Vote

95. Plaintiff incorporates the above-referenced paragraphs as if fully set forth herein.

96. Each of the Defendants was a director and/or officer of FirstMerit and as such owed to FirstMerit the highest duty known to the law. Each of the Defendants agreed to and did participate in and/or aided and abetted one another in a deliberate course of action designed to divert corporate assets in breach of the fiduciary duties these Defendants owed to FirstMerit.

97. As demonstrated by the allegations above, Defendants breached their fiduciary duties of loyalty, good faith, candor and independence owed to FirstMerit and its shareholders by failing to amend or alter 2011 executive compensation in connection with the negative say on pay vote. In particular, despite having their executive compensation program rejected by a majority of voting shareholders, the Board has done nothing meaningful in response, in direct violations of their fiduciary duties.

98. Defendants have violated fiduciary duties of care, loyalty, good faith, candor and independence owed to FirstMerit and its shareholders, have engaged in unlawful self-dealing and have acted to put their personal interests and/or their colleagues' interests ahead of the interests of FirstMerit and its shareholders. As directors and/or officers of FirstMerit, Defendants participated in the wrongful acts alleged herein. They thereby breached their fiduciary duties to FirstMerit's shareholders.

99.     In committing the wrongful acts particularized herein, Defendants have pursued or joined in the pursuit of a common course of conduct, and have acted in concert with one another in furtherance of their common plan or design.

100.    Defendants' misconduct was not due to an honest error of judgment, but rather their bad faith and was done knowingly, willfully, intentionally or recklessly.

101.    By reason of the foregoing acts, practices and course of conduct, Defendants have failed to exercise good faith and instead have acted knowingly or in reckless disregard of their fiduciary obligations toward FirstMerit and its public shareholders, harming FirstMerit.

### FOURTH CAUSE OF ACTION
### Against Defendants for Unjust Enrichment

102.    Plaintiff incorporates the above-referenced paragraphs as if fully set forth herein.

103.    As a result of the conduct described above, Defendants will be and have been unjustly enriched at the expense of FirstMerit, in the form of unjustified salaries, benefits, stock option grants and other emoluments of office.

104.    All the payments and benefits provided to Defendants based upon or related to Defendants' executive compensation scheme were unjustly awarded and at the expense of FirstMerit, resulting in substantially unearned benefits.

105.    Defendants should be ordered to disgorge the gains which they have and/or will unjustly obtain and/or a constructive trust should be imposed for the benefit of the Company.

### FIFTH CAUSE OF ACTION
### Against Defendants for Violations of Section 14(a) of the Securities Exchange Act of 1934

106.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

107.    Rule 14a-9, promulgated pursuant to §14(a) of the Securities Exchange Act of 1934, provides that no proxy statement shall contain "any statement which, at the time and in the light of

the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9. Specifically, the Proxy violated §14(a) and Rule 14a-9 because it omitted material facts regarding the Company's compensation practices.

108. The Proxy was false and misleading when issued because it falsely stated that the Board's pay-for-performance policy was designed "to encourage and reward the achievement of our long-term interests and the creation of long-term shareholder value."

109. These statements were false and misleading because, as described, *supra*, in 2011, FirstMerit's stock likewise suffered enormous erosion in value of over 20%.

110. In the exercise of reasonable care, Defendants should have known that the statements contained in the Proxy were materially false and misleading.

111. The misrepresentations and omissions in the Proxy were material to Plaintiff and FirstMerit stockholders in voting on the Proxy. The Proxy was an essential link in the accomplishment of the continuation of Defendants' violation of the Company's compensation policies, as revelations of the truth would have immediately thwarted a continuation of shareholders' endorsement of the directors' positions, the executive officers' compensation, and the Company's compensation policies.

112. The Company was damaged as a result of Defendants' material misrepresentations and omissions in the Proxy.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A. Against Defendants and in favor of FirstMerit for the amount of damages sustained by the Company as a result of Defendants' violations of state and federal law;

   B.     Extraordinary equitable and/or injunctive relief as necessary or permitted by law, equity and the statutory provisions sued hereunder, including disgorgement, attachment, impoundment, imposition of a constructive trust on or otherwise restricting the disposition/exercise of improvidently awarded executive compensation based upon false financial reporting and/or the proceeds of Defendants' trading activities or their other assets so as to ensure that Plaintiff on behalf of FirstMerit has an effective remedy;

   C.     Ordering the implementation and administration of internal controls and systems at FirstMerit designed to prohibit and prevent excessive and/or unwarranted executive compensation payments to FirstMerit's senior executives;

   D.     Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, and accountants' and experts' fees, costs, and expenses; and

   E.     Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

   Plaintiff demands a trial by jury.


Dated:  July 3, 2012                                STRAUSS TROY

                                                    /s/ Richard S. Wayne
                                                    Richard S. Wayne (Ohio Atty. #0022390)
                                                    Thomas P. Glass (Ohio Atty. #0062382)
                                                    150 E. Fourth Street
                                                    Cincinnati, OH  45202-4018
                                                    (513) 621-2120 – Telephone
                                                    (513) 629-9426 – Facsimile
                                                    E-mail: *rswayne@strausstroy.com*
                                                    E-mail: *tpglass@strausstroy.com*

                                                    THE WEISER LAW FIRM, P.C.
                                                    Robert B. Weiser
                                                    Brett D. Stecker
                                                    Jeffrey J. Ciarlanto
                                                    Joseph M. Profy
                                                    David M. Promisloff
                                                    22 Cassatt Avenue, First Floor
                                                    Berwyn, PA  19312
                                                    (610) 225-2677 – Telephone
                                                    (610) 408-8062 – Facsimile

LAW OFFICE OF ALFRED G. YATES, JR., P.C.
Alfred G. Yates, Jr.
Gerald L. Rutledge
519 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA  15219
(412) 391-5164 – Telephone
(412) 471-1033 – Facsimile

*Counsel for Plaintiff*

2992143_1.DOC