UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **Robinson Family Trust, et al.,** | ) | **CASE NO. 5:12 CV 1713** |
| | ) | |
| Plaintiffs, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **Paul Greig, et al.,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendants. | ) | |

## INTRODUCTION

This matter is before the Court upon Defendants' Motion to Dismiss the Amended Consolidated Verified Shareholder Derivative Complaint (Doc. 53). This is a "say on pay" shareholder derivative action. For the reasons that follow, the motion is GRANTED.

## FACTS

Plaintiffs, the Robinson Family Trust, Ryan C. Smalley, and Haverhill Retirement System, bring this action derivatively on behalf of FirstMerit Corporation ("FirstMerit"), against defendants, Paul G. Greig, Steven H. Baer, Karen S. Belden, R. Cary Blair, John C. Blickle, Robert W. Briggs, Richard Colella, Gina D. France, Terry L. Haines, J. Michael

1

Hochschwender, Clifford J. Isroff, Phillip A. Lloyd II, Terrence E. Bichsel, William P. Richgels, David G. Goodall, Larry Shoff, and nominal defendant FirstMerit.

According to the complaint, the Board of Directors ("Board") of FirstMerit set 2011 executive compensation at an excessive level.  Plaintiffs allege that the compensation totaled over $12.1 million, including over $6.63 million awarded to FirstMerit's Chief Executive Officer.  Plaintiffs claim that this represents an increase of 16%, even though FirstMerit's stock price declined at least 20% in 2011.

In the proxy statement filed with the SEC on March 8, 2012, the Board stated as follows:

> Our compensation program for our named executive officers is designed to deliver a full spectrum of pay, benefits, career development and work environment for our named executive officers.  The Compensation Committee seeks to maximize the return from our investment by structuring the compensation program to include performance-based, at-risk pay components aligned to strategic and financial performance objectives and risk mitigation and retention related components.  Pay elements are specifically designed to encourage and reward the achievement of our long-term interests and the creation of long-term shareholder value.  For each named executive officer, the compensation package is also intended to represent a fair and competitive compensation arrangement that promotes a meaningful work experience including personal fulfillment, competitive pay and job security.  Ultimately, the Compensation Committee's goal is to structure a program that promotes our long-term success and provides an optimal long-term value creation scenario for our shareholders, business partners, customers and executives, while not encouraging excessive risk-taking that could harm our business.

Plaintiffs allege that statements in the Proxy are false.  Specifically, according to the complaint, the Proxy creates a "pay for performance" policy pursuant to which the executives will only receive "enhanced" compensation if they create "meaningful and long-term performance" for the stockholders.  According to the complaint, the stock price fell by 20% in 2011 and, therefore, the executives were "excessively" compensated.

Following the issuance of the Proxy, FirstMerit shareholders conducted a "say on pay" vote.  As a result, the shareholders rejected the compensation recommendation by a vote of

47,183,967 to 41,151,172.

Despite the vote, the Board has not rescinded the 2011 compensation, nor has the Board indicated that it will do so. This lawsuit followed.

The complaint contains five claims for relief. Count one is a claim for breach of fiduciary duty in connection with the "issuance of the false and misleading statements." Count two is a claim for breach of fiduciary duty "in connection with the Board's compensation practices." Count three is a breach of fiduciary duty claim "in connection with the failure to respond to the negative say on pay vote." Count four is a claim for unjust enrichment and count five is a claim pursuant to Section 14(a) fo the Securities Exchange Act of 1934 based on false and misleading statements in the Proxy.

Defendants move to dismiss this lawsuit and plaintiffs oppose the motion.

**ANALYSIS**

This is a derivative shareholder action and, as such, plaintiffs must satisfy the pleading requirements set forth in Federal Rule of Civil Procedure 23.1(b), which provides:

Pleading Requirements. The complaint must be verified and must:

(1) allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's shares or membership later developed on it by operation of law;

(2) allege that the action is not a collusive one to confer jurisdiction that the court would otherwise lack; and

(3) state with particularity:

    (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and

    (B) the reasons for not obtaining the action or not making the effort.

Subsection (b)(3) is commonly referred to as the "pre-suit demand" requirement. This rule is grounded in the theory that "any action taken by a director on behalf of a corporation is taken in good faith and for the benefit of the corporation.[1]" *Drage v. Procter & Gamble*, 694 N.E.2d 479 (Oh. Ct. App. 1997); *Doe v. Malkov*, 2002 WL 31928645 (Oh. Ct. App. Dec. 31, 2002)("Under Ohio law, it is presumed that any action taken by a director on behalf of the corporation is taken in good faith and for the benefit of the corporation.").

An exception to the pre-suit demand exists when a shareholder establishes that a demand would have been futile. *Drage*, 694 N.E.2d at 482; *In re Ferro Corp. Deriv. Litig.*, 511 F.3d 611, 618 (6th Cir. 2008)(noting that Ohio recognizes an exception to the demand requirement where shareholder can demonstrate that demand would have been futile). "Establishing demand futility under Ohio law is not an easy task." *In re Keithley Instruments, Inc., Derivative Litigation*, 599 F.Supp.2d 908 (N.D.Ohio 2009)(citations and quotations omitted). Futility means that "the directors' minds are closed to argument and that they cannot properly exercise their business judgment in determining whether suit should be filed." *Id*. (Citations and quotations omitted). Futility exists "where the directors are antagonistic, adversely interested, or involved in the transactions attacked." *Id*.

---

[1] Ohio law applies to this case in determining whether plaintiffs made a proper demand or whether the demand requirement is excused on futility grounds. *See, Kamen v. Kemper Fin. Services, Inc.*, 500 U.S. 90,109 n. 10 (1991). Ohio courts routinely rely on Delaware state law in making these determinations. *See, In re Keithly Instruments, Inc.*, 599 F.Supp.2d 908, 918 n.2 (noting that Delaware law is persuasive in considering whether demand requirement should be excused as futile); *Drage,* 694 N .E.2d 479 (citing Delaware law throughout). Moreover, both parties rely on Delaware law in their briefing. Accordingly, this Court will look to both Ohio and Delaware law in addressing these issues.

> Merely alleging futility will not suffice; rather, in accordance with Rule 23.1, plaintiff must state with particularity the reasons for circumventing the demand requirement. That is, the plaintiff must point to facts which show that the presumed ability of the directors to make unbiased, independent business judgments about whether it would be in the corporation's best interest to file the action does not exist in this case. Broad, generalized and conditional statements...do not constitute facts pleaded with particularity.

*Id*. (Citations and quotations omitted).

In order to establish futility, a plaintiff must allege with particularity that reasonable doubt exists that: (1) the directors are disinterested and independent; and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment. *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984).

Here, plaintiffs must allege with particularity that at least half (in this case, six) members of the Board of Directors were not disinterested and independent at the time plaintiff filed this lawsuit. *In re Keithley Instruments, Inc., Deriv. Litig.*, 599 F.Supp.2d at 919. Plaintiffs argue that all members of the Board are subject to personal liability as a result of the false statements made in the Proxy statement. In response, defendants argue that the complaint is completely barren of any facts suggesting that any particular director acted disloyally or with the intent to harm FirstMerit. Nor does the complaint identify any "material facts" allegedly omitted from the Proxy Statement. According to defendants, plaintiffs challenge the fact that the Board does not disclose plaintiffs' *conclusion* that the compensation package was excessive and did not comply with the Proxy Statement. The Board, however, need not disclose all possible negative interpretations of its actions. Rather, plaintiffs must show that *statements of fact* in the Proxy Statement were false. According to defendants, plaintiffs wholly fail in this regard.

Upon review, the Court finds that plaintiffs fail to allege with particularity that the Board members are "not disinterested and independent" because they risk possible liability as a result

of the allegedly false statements in the Proxy. As defendants point out:

> [D]emand is not excused solely because the directors would be deciding to sue themselves. Rather, demand will be excused based on a possibility of personal director liability only in the rare case when a plaintiff is able to show director conduct that is so egregious on its face that board approval cannot meet the test of business judgment, and a substantial likelihood of director liability therefore exists.

*In re Citicorp Deriv. Litig.*, 964 A.2d 106, 121 (Del. Ch. Ct. 2009). Here, plaintiffs make no specific allegations regarding the factual statements at issue in the Proxy. Rather, plaintiffs generally allege only that the Board claimed that its executive compensation policy is designed "to encourage and reward the achievement of our long-term interests and the creation of long-term shareholder value," as well as to promote "long-term success and provide[] an optimal long-term value creation scenario for our shareholders." From these statements, plaintiffs appear to allege that the compensation package afforded to FirstMerit executives rendered this statement false because the stock price fell, yet the compensation increased. As a result, each director faces a substantial likelihood of personal liability. The Court rejects this argument. Plaintiffs simply fail to point to any express promise or statement that would impose personal liability on the Board for approving the compensation.

Moreover, to the extent plaintiffs are claiming that the Board breached its fiduciary duties or the duty of loyalty for not revoking the 2011 executive compensation in light of the "say on pay" vote, the argument is rejected. "Say on pay" votes arose as a result of the Dodd-Frank Act. The Act, itself, however, expressly provides that such shareholder votes are not binding on the Board. Nor can such votes be construed to "create or imply any change to the fiduciary duties of such issuer or board of directors," or the addition of any such duties. 15 U.S.C. § 78n-1(c). Accordingly, the fact that the shareholders' views of compensation differed from those of the

Board does not give rise to personal liability on the part of the Board members.

Plaintiffs further argue that they allege that at least six board members were "interested" for purposes of the *Aronson* test. According to plaintiffs, defendant Greig is an interested member because, as a recipient of compensation in 2011, he received a personal benefit from the Board's action. In addition, plaintiffs argue that defendant Baer is "interested" because he is an employee of a separate consulting firm that does business with FirstMerit. Plaintiffs then argue that five of the remaining directors served on FirstMerit's Compensation Committee. The Court finds that plaintiffs' argument is not well-taken. While Greig and Baer may be interested for purposes of *Aronson*, the Court finds that plaintiff fails to allege any facts, let alone with particularity, that the members of the Compensation Committee are interested. As plaintiffs points out, "[a] director is considered interested where he or she will receive a personal financial benefit from a transaction that is not equally shared by the stockholders. Directorial interest also exists where a corporate decision will have a materially detrimental impact on a director, but not on the corporation and the stockholders." *See, Edmonds v. Getty*, 524 F.Supp. 2d 1267, 1277 (W.D. Wash. 2007)(applying Delaware law)[2]. Plaintiffs fail to articulate any reason why membership on the Compensation Committee would result in a benefit to these directors. There is no allegation that any director on the Compensation Committee will personally benefit from

---

[2] Plaintiff attempts to analogize *Edmonds* to the facts of this case. Such reliance, however, is misplaced. In *Edmonds*, the directors received "backdated" options. As the court noted, however, "directors receiving backdated stock options receive a benefit not shared by stockholders. When purchasing the company's stock, the shareholders do not have the benefit of reaching back in time to buy their shares at [a] low-price point." *Edmonds*, 524 F.Supp. 2d at 1272. No similar self-interest arises with respect to the setting of executive pay.

7

the compensation determinations. Nor is there any suggestion that these directors will be adversely affected. Plaintiffs further do not allege that the ten outside directors engaged in self-dealing, bias, domination, or any other act that would implicate their "interestedness." To the extent plaintiffs argue that the Compensation Committee members are likely to face personal liability as a result of the Proxy Statement, the argument is rejected for the reasons set forth above.

With regard to the second *Aronson* prong, defendants argue that the overwhelming majority of courts addressing this issue have concluded that negative "say on pay" votes do not excuse demand. According to defendants, plaintiffs fail to allege that the compensation decisions were not made in good faith or that the Board was inadequately informed in making these decisions. In response, plaintiffs argue that the Board increased pay even in the face of: (1) a five-year negative shareholder return of 19.4%; (2) a 31% stock price decline during the same period; and (3) a 20% stock price drop in 2011. According to plaintiffs, this action violated the company's publicly stated "pay for performance" policy in which the Board indicated that executives would receive increased pay only if there was demonstrable success in achieving "long-term interests" and creating "long-term shareholder value." Plaintiffs argue that this action is not a valid exercise of "business judgment." Therefore, demand is excused. According to plaintiffs, a recent decision from the Southern District of Ohio should be followed by this Court.

Having failed to satisfy the first prong of *Aronson*, there is a presumption that the board's actions were the product of a valid exercise of business judgment. *Raul v. Rynd*, —F. Supp.2d — , 2013 WL 1010290 at * 4 (D. Del. 2013). Under the second prong, "a plaintiff must plead

particularized facts sufficient to raise (1) a reason to doubt that the action was taken honestly and in good faith or (2) a reason to doubt that the board was adequately informed in making the decision." *Id*.

Upon review, the Court finds that the complaint is devoid of any factual allegations suggesting that the members of the Board did not act in good faith. The fact that plaintiffs' interpretation and application of the "pay for performance" policy differs from that of the Board does not equate to bad faith on the part of the Board. Nor is "bad faith" demonstrated simply because the shareholders disagree with the Board's compensation decisions. It is well-established that setting executive compensation is a determination that rests with the Board. *See, e.g.*, *Teamsters Local v. McCarthy*, 2011 WL 4836230 (Sup. Ct. Ga. Sept. 16, 2011); *Cf.*, *Worth v. Huntington Bancshares, Inc.*, 540 N.E.2d 249, 255 (Ohio 1989)(in determining executive compensation, "it is certainly not for this court to second-guess the business judgment of corporate executives"). Nor are there any facts whatsoever suggesting that the Board was inadequately informed in setting compensation. Accordingly, demand is not excused. *See, Raul*, 2013 WL 1010290 (demand not excused after negative "say on pay" vote where plaintiff alleged that the compensation package violated the company's "pay for performance" plan articulated in Proxy Statement); *See also, Swanson v. Weil*, 2012 WL 4442795 (D. Colo. Sept. 26, 2012)(same); *Gordon v. Goodyear*, 2012 WL 2885695 (N.D. Ill. July 13, 2002)(same); *Iron Workers Local v. Bogart*, 2012 WL 2160436 (N.D. Cal. June 13, 2012)(same); *Laborers' Local v. Intersil*, 868 F.Supp.2d 838 (N.D. Cal. March 7, 2012)(same); *Plumbers Local v. Davis*, 2012 WL 104776 (D. Ore. Jan. 11, 2012)(same).

Plaintiffs rely almost exclusively on *NECA-IBEW Pension Fund ex rel. Cincinnati Bell,*

*Inc. v. Cox*, 2011 WL 4383368 (S.D. Ohio Sept. 20, 2011) in support of their position.  In

*Cincinnati Bell*, the court determined that plaintiff alleged sufficient facts to excuse pre-suit

demand.  The Court reasoned as follows:

> [I]n this case, the directors did not merely approve the transaction, they also recommended to the shareholders that the shareholders approve the compensation.  Given that the director defendants devised the challenged compensation, approved the compensation, recommended shareholder approval of the compensation, plaintiff has demonstrated sufficient facts to show that there is reason to doubt these same directors could exercise their independent business judgment over whether to bring suit against themselves for breach of fiduciary duty in awarding the challenged compensation.

*Cincinnati Bell*, 2011 WL 4383368 at * 4.

Plaintiffs argue that this Court should follow *Cincinnati Bell.*   The Court declines to do

so.  As defendants point out, the overwhelming majority of cases to address "say on pay"

lawsuits have consistently held that pre-suit demand is not excused.  For the reasons set forth

above, the Court agrees with the rationale of these cases.  Moreover, *Cincinnati Bell* has been

heavily criticized by nearly every court to have addressed the case.  *See, e.g.*, *Swanson,* 2012 WL

4442795 at *7 ("I find that the *Cincinnati Bell* case is not persuasive and decline to follow its

holding."); *Laborers' Local v. Intersil*, 868 F.Supp.2d 838, n.5 (refusing to follow *Cincinnati

Bell* after noting that the decision has been "called into question"); *Plumbers Local v. Davis*,

2012 WL 104776 at *8 (rejecting *Cincinnati Bell* and indicating that "it is unlikely that the case

remains viable legal authority").[3]

The court in *Cincinnati Bell* also relied on the fact that all of the directors were named

---

[3] Defendants further point out that plaintiff's counsel in *Cincinnati Bell* was sanctioned by the court for failing to disclose authority related to the "say on pay" issue.  In fact, the court later questioned whether it had jurisdiction over the case.

10

defendants in the action. The court relied on *dicta* from two Ohio cases suggesting that naming all members of the board of directors as defendants may be sufficient to excuse the pre-suit demand requirement. At least one federal court in this District, however, noted that bare allegations that the "board would not want to sue itself" are insufficient to excuse demand. Rather, to accept this argument would mean that "plaintiffs could easily circumvent the demand requirement by simply naming the entire board as defendants and alleging that they were complicit in the alleged wrongdoing." *See, In re Ferro Corp. Derv. Litig.*, 2006 WL 2038659 (N.D. Ohio, March 21, 2006), *aff'd*, 511 F.3d 611 (6th Cir. 2008).[4] This Court agrees that the Ohio Supreme Court would not conclude that simply naming all of the members of a Board of Directors as defendants is sufficient to excuse demand. This is especially so in light of the fact that Delaware courts, on which Ohio courts routinely rely in deciding issues arising in shareholder derivative actions, hold to the contrary. In all, the Court declines to adopt the reasoning in *Cincinnati Bell*. Rather, the Court finds that plaintiffs fail to allege sufficient facts from which the Court could find a reason to doubt that (1) the action was taken honestly and in good faith or (2) the board was adequately informed in making the decision. Accordingly, demand is not excused as futile under the second prong of *Aronson*[5] and dismissal is warranted. Having so concluded, the Court need not reach defendants' argument that the complaint is not

---

[4] On appeal, the Sixth Circuit agreed that the Ohio Supreme Court would conclude that similar language was *dicta*.

[5] Although plaintiffs request in a footnote that they be granted leave to amend if the Court "is inclined to grant" the motion to dismiss, the Court finds that such a request is not well-taken. As an initial matter, no formal motion was filed and therefore plaintiffs present no grounds justifying relief. Moreover, plaintiffs fail to identify any facts that would remedy the shortcomings in the pleading.

properly verified.

### **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss the Amended Consolidated Verified Shareholder Derivative Complaint is GRANTED.

IT IS SO ORDERED.

                                      /s/ Patricia A. Gaughan
                                      PATRICIA A. GAUGHAN
                                      United States District Judge

Dated: 5/10/13